UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 21-CV-3240 (ENV) (RER)
_____

JUUL LABS INC.,

Plaintiff,

VERSUS

GATES MINI MARKET CORP,

Defendant.

_____

**REPORT & RECOMMENDATION**

February 9, 2022
_____

TO THE HONORABLE ERIC N. VITALIANO
SENIOR UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

JUUL Labs, Inc. ("Plaintiff" or "JLI") commenced this action on June 8, 2021 against Gates Mini Market Corp. ("Defendant" or "Gates"), alleging that Gates sold counterfeit versions of JLI's products, violating sections 32(1) and 43(a) of the Lanham Act (15 U.S.C. §§ 1114(1) and 1125(a)), and related state law. (ECF No. 1 ("Compl.") ¶ 1). Currently before the Court is Plaintiff's motion for default judgment (ECF No. 11 ("Pl.'s Mot.")), which Your Honor has referred to me for a report and recommendation. (ECF order dated 09/02/2021).

After carefully reviewing the record and for the reasons set forth herein, I respectfully recommend that the motion be GRANTED in part. Respectfully, the Court should (1) grant default judgment on JLI's Lanham Act claims of counterfeit and gray market goods, and false designation

1

of origin (15 U.S.C. §§ 1114, 1125(a)), as well as its common law trademark infringement; (2) dismiss JLI's claims of unfair competition under 15 U.S.C. § 1125(a) and the common law, and deceptive acts and practices under section 349 of New York General Business Law; (3) award JLI $50,000 in damages and post-judgment interest on those damages at the statutory rate; and (4) issue a permanent injunction barring Gates from selling counterfeit or grey market JLI products in the future.

## BACKGROUND

I.  Factual Allegations

JLI designs, manufactures, and distributes electronic nicotine-delivery systems[1] and related products branded as JUUL and JUULpods. (Compl. ¶¶ 1, 11). JLI owns several federally registered trademarks related to the JUUL brand, including the name "JUUL"; a stylized version of "JUUL" using rounded letters; and the name "JUULpods" (collectively, the "JUUL marks"). (*Id*. ¶ 11; ECF No. 1-1 ("Registration Certificates")). These marks have been in use since 2015. (*Id*.). JLI has put substantial resources into developing recognition of the JUUL brand, and JUUL-branded products are well known to consumers and have gained media attention and commercial success. (Compl. ¶¶ 17–18). JUUL-branded products are marketed and sold around the world. (*Id*. ¶ 18). In the United States, JLI sells JUUL products through an authorized distribution network. (*Id*.). The JUUL marks are displayed prominently on JUUL products and their packaging. (*Id*. ¶ 14). The JUUL marks have never been abandoned by JLI, and JLI preserves and maintains its rights to them. (*Id*. ¶¶ 15–16).

---

[1] These nicotine delivery systems include "(i) a device containing a rechargeable battery, control circuitry and a receptacle for a cartridge or pod, (ii) a disposable cartridge or pod ('JUULpod') that can be inserted into the device, has a heating chamber and is prefilled with a proprietary nicotine e-liquid formulation, and (iii) a charger for charging the device, and related accessories." (Compl. ¶ 13).

2

Gates is a retail store located at 1534 Myrtle Avenue in Brooklyn, New York. (*Id*. ¶ 7). JLI alleges that on an unknown date, Gates began offering for sale and selling products bearing the JUUL marks that looked like JUUL products but that were not made by JLI or a JLI-authorized manufacturer, and were thus counterfeit goods. (*Id*. ¶ 19). JLI did not authorize these sales and has not authorized any third party to make or sell JUUL products. (*Id*. ¶ 20). "The Counterfeit Goods sold by Defendant are therefore not manufactured in accordance with JLI's own stringent quality controls but are instead manufactured outside of JLI's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements/controls." (*Id*.). The counterfeit goods bore imitations of the JUUL marks that JLI describes as "confusingly similar," which made the counterfeit goods likely to be confused for genuine JUUL products. (*Id*. ¶ 21). In addition, Gates allegedly "offered to sell and sold non-genuine JUUL Products which, as stated on the packaging of the products themselves, are only authorized for sale in particular countries outside the United States and materially differ from genuine JUUL Products," otherwise known as gray market goods. (*Id*. ¶ 25). These gray market JUUL products are labeled and packaged in accordance with the regulations of foreign markets, and therefore are not in compliance with U.S. Food and Drug Administration (FDA) regulations. (*Id*.).

On September 24, 2019, a JLI representative went to Gates and purchased a counterfeit JUUL-branded product. (*Id*. ¶ 22; ECF No. 1-2). JLI later inspected the product and confirmed that it was not a genuine JUUL product and was counterfeit. (Compl. ¶ 22).

On February 7, 2020, JLI mailed a cease-and-desist letter to Gates saying that JLI had confirmed the market sold counterfeit JUUL products; explaining that JLI owned the JUUL marks, that it was illegal for Gates to sell counterfeit JUUL products and JLI could sue the market;

3

demanding that Gates stop the "sale, manufacture, marketing, and importation of Counterfeit Goods and all other unauthorized use of JLI's intellectual property"; and noting that any further unauthorized use of the JUUL marks or sales of counterfeit goods would be considered a willful infringement of the law. (*Id*. ¶ 23). In the letter, JLI's counsel requested that Gates contact JLI to try to resolve any legal issues related to the sale of counterfeit JUUL products before litigation, but Gates did not reach out to JLI's counsel. (*Id*. ¶ 24).

Subsequently, on March 13, 2020, a JLI representative went to Gates and purchased a gray market JUUL product, which JLI confirmed was diverted from another market and was not authorized for sale in the U.S. (*Id*. ¶ 26; ECF No. 1-4).

JLI asserts that Gates "is not authorized and never has been authorized by JLI to produce, manufacture, distribute, market, offer for sale, and/or sell merchandise bearing the JUUL Marks, or any variations thereof." (Compl. ¶ 27). However, Gates uses the JUUL name and the JUUL marks to advertise and sell goods that are either counterfeit or gray market JUUL products. (*Id*. ¶ 28). JLI contends that Gates Mini Market's conduct is likely to confuse, deceive, and mislead customers into believing they are purchasing genuine JUUL-branded products, when really they are purchasing counterfeit or gray market goods, and that Gates customers are likely to mistakenly attribute any defect or problem with these products to JLI, hurting the JUUL brand's reputation and goodwill. (*Id*. ¶¶ 29–30). JLI contends that these illegal sales by Gates cause economic loss to JLI and thwart JLI's efforts to promote its products using the JUUL marks. (*Id*. ¶ 32).

## II.   Procedural History

JLI commenced this action on June 8, 2021. (Compl.). Gates was properly served via personal service on its manager (ECF No. 8), but failed to answer or otherwise respond to this action. Subsequently, JLI requested a certificate of default against Gates on July 15, 2021 (ECF No. 9)

4

and the Clerk of Court entered default against Gates on July 19, 2021. (ECF No. 10). JLI now seeks default judgment on its claims of: (i) Trademark Infringement – Counterfeit Goods (15 U.S.C § 1114); (ii) False Designation of Origin – Counterfeit Goods (15 U.S.C. § 1125(a)); (iii) Unfair Competition – Counterfeit Goods (15 U.S.C. § 1125(a)); (iv) Trademark Infringement – Gray Market Goods (15 U.S.C. § 1114); (v) Trademark Infringement Under Common Law; (vi) Common Law Unfair Competition; and (vii) Deceptive Acts and Practices Under § 349 of New York General Business Law. (Pl.'s Mot. at 7, 12). JLI seeks $750,000 in statutory damages under the Lanham Act, reflecting an award of $250,000 for each of the three trademarks that were violated; post-judgment interest; and a permanent injunction barring any future infringement on JLI's trademarks by Defendant. (*Id*. at 13, 17–18).

## DISCUSSION

I. Default Judgment

Federal Rule of Civil Procedure 55, which governs here, establishes a two-step process for entering judgment against a party who fails to defend. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). In the first step, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In the second step, after default has been entered, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

For purposes of default judgment, the court must accept a plaintiffs' well-pleaded factual allegations as true, as the defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability[.]" *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp*., 973 F.2d 155, 158 (2d Cir. 1992). The court must then determine whether the well-pleaded factual

5

allegations "establish the defaulting party's liability as a matter of law." *Broad. Music, Inc. v. The Living Room Steak House, Inc.*, No. 14-CV-6298 (FB)(RER), 2016 WL 756567, at *2 (E.D.N.Y. Feb. 26, 2016), *adopted by,* 2016 WL 1056609 (E.D.N.Y. Mar. 17, 2016). However, the court need not accept all well-pleaded allegations as to damages; instead, a plaintiff must show that the compensation sought "naturally flow[s] from the injuries pleaded" and reflects the damages demanded in their pleadings. *Greyhound Exhibit Grp*, 973 F.2d at 158–159; Fed. R. Civ. P. 54(c).

II. Liability

JLI seeks default judgment on seven claims, including four trademark claims, two unfair competition claims, and one claim of deceptive acts and practices under the New York General Business Law. (Pl.'s Mot. at 13, 17–18).

A. JLI has Established Defendant's Liability Under the Lanham Act

To prove trademark infringement or false designation of origin under the Lanham Act, a plaintiff must show that (1) "it has a valid mark that is entitled to protection" and that (2) the defendant's "actions are likely to cause confusion with [that] mark." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)); *Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 61 (E.D.N.Y. 2021) (noting that the legal standard for false designation of origin claims under Section 43(a) of the Lanham Act and for trademark infringement under the Lanham Act are the same). The legal standard for trademark infringement under New York common law is "essentially the same" as under the Lanham Act. *Deckers Outdoor Corp. v. Huang*, No. 15-CV-4772 (AMD)(RER), 2017 WL 1842556, at *2 (E.D.N.Y. Apr. 20, 2017), *adopted by*, 2017 WL 1854728 (E.D.N.Y. May 5, 2017).

The first prong is satisfied by the valid registration of a trademark. *Tiffany & Co.*, 971 F.3d at 84; 15 U.S.C.A. § 1115 (stating that a federally registered trademark "shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration"). JLI has established that it owns the three federally registered trademarks at issue, satisfying this prong. (Compl. ¶ 11; Registration Certificates).

"Under the second prong, the analytical framework varies depending on whether the infringing goods are counterfeit goods or . . . gray market goods." *Energizer Brands, LLC*, 529 F. Supp. 3d at 62 (quoting *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-CV-5826 (CBA)(LB), 2019 WL 5696148, at *4 (E.D.N.Y. Sept. 30, 2019)). As discussed below, JLI has proven trademark infringement for both counterfeit and gray market goods.

1. Counterfeit Goods

In cases involving counterfeit goods, courts in the Second Circuit look to the eight non-exclusive factors established in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) to determine whether the goods are likely to cause confusion:

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap" by developing a product for sale in the defendant's market; (5) evidence of actual consumer confusion; (6) evidence that the defendant adopted the imitative term in bad faith; (7) the respective quality of the products; and (8) the sophistication of the relevant population of consumers.

*Tiffany & Co.*, 971 F.3d at 84–85. No single factor is dispositive and courts consider the totality of the circumstances in determining whether consumer confusion is likely. *Id.*

Here, JLI has shown a high likelihood of consumer confusion. As to the first factor, JLI's trademark is strong, as its JUUL system "dominates that market" of electronic cigarettes. *Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, 509 F. Supp. 3d 52, 58 (D.N.J. 2020). As to the second factor, JLI has submitted photographs showing that the counterfeit goods purchased at Gates were nearly identical to their own JUUL products. (ECF No. 1-2). As to the third factor, the counterfeit products were being sold in the "same retail channels as genuine JUUL Products and Defendant sells to the same prospective consumers as JLI." (Pl.'s Mot. at 11; Compl. ¶ 35). The fourth factor—bridging the gap—is not relevant here. As to the fifth, JLI has presented evidence of a high likelihood of consumer confusion (*e.g.* compl. ¶¶ 30, 35, 49), which is sufficient. *See Microsoft Corp. v. Does 1-2*, No. 20-CV-1217 (LDH)(RER), 2021 WL 4755518, at *6 (E.D.N.Y. May 28, 2021), *adopted by*, 2021 WL 4260665 (E.D.N.Y. Sept. 20, 2021) (citing *Am. Auto. Ass'n, Inc. v. Limage*, No. 15-CV-7386 (NGG)(MDG), 2016 WL 4508337, at *4 (E.D.N.Y. Aug. 26, 2016)). As to the sixth factor, "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Limage*, 2016 WL 4508337, at *4. JLI has shown that Defendant exploited JLI's brand when it sold the counterfeit goods. (Compl. at 8). As to the seventh factor, JLI establishes that the counterfeit products sold at Gates are "not manufactured in accordance with JLI's own stringent quality controls but are instead manufactured outside of JLI's knowledge and control, using unknown substances and materials, in unknown locations and with unknown manufacturing requirements/controls," showing that the difference in quality between the products could cause harm and confusion. (*Id*. ¶ 20). As to the eighth factor, JLI markets its products to "current adult smokers" who JLI asserts are likely to be confused by the counterfeit goods. (*Id*. ¶¶ 10, 35).

8

Together, these factors clearly weigh in favor of a finding that the counterfeit goods are likely to cause confusion among consumers. As such, I respectfully recommend that the Court grant default judgment on JLI's trademark infringement claims for counterfeit goods under the Lanham Act and common law. *See, e.g., Deckers Outdoor Corp*. WL 1842556, at *3 (finding liability under the Lanham Act for trademark infringement and false designation of origin, as well as common law trademark infringement, when a defendant sold counterfeit boots, violating a popular brand's registered trademarks).

2. Gray Market Goods

Gray market goods are "goods that are manufactured [under authorization from the trademark owner], are legally purchased [outside the United States] from authorized distributors, and are then imported by persons other than the trademark holder and without the markholder's permission." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 241 (2d Cir. 2009) (quoting *Olympus Corp. v. United States,* 792 F.2d 315, 317 (2d Cir.1986)). Gray market goods typically use identical trademarks and are sold in original packaging because they were obtained legitimately from a manufacturer in another country. *Abbott Lab'ys*, 2019 WL 5696148, at *4.

"Generally, the trademark holder does not have a right under the Lanham Act to control unauthorized resales as long as the goods sold are genuine, under the so-called 'first-sale doctrine.'" *Id*. However, there are two types of goods that are not considered genuine, giving rise to liability for resale under the Lanham Act, 1) "goods that are not intended for domestic sale and are materially different from domestic goods," and 2) "goods sold in contravention of legitimate, established, substantial, and nonpretextual quality-control measures that the trademark holder follows, the sale of which will diminish the value of the mark." *Id*. (citing *Original Appalachian*

9

*Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 73 (2d Cir. 1987), *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 7 (2d Cir. 1996)).

Here, JLI has properly alleged that the gray market goods Gates sold are materially different from their domestic counterparts because they "are designed to comply with the regulations of the authorized foreign marketplaces" and not the United Stat, have different labels, and carry different warnings in accordance with those foreign standards. (Compl. ¶ 60). Further, these goods "are not in compliance with the regulations of the U.S. Food and Drug Administration," contravening those legitimate, substantial, established, and nonpretextual quality-control measures. (*Id.*) This clearly diminishes the value of the JUUL marks. Therefore, I respectfully recommend that the Court grant default judgment on JLI's Lanham Act claims for trademark infringement via gray market goods under 15 U.S.C. § 1114. *See, e.g., Original Appalachian Artworks, Inc.*, 816 F.2d at 74 (affirming district court's finding that sale of foreign dolls not intended to be sold in United States and materially different from dolls marketed in United States violated 15 U.S.C. § 1114).

B. Remaining Claims

JLI's brings additional claims of unfair competition (under both 15 U.S.C. § 1125(a) and common law), and deceptive acts and practices under § 349 of New York General Business Law. (Pl.'s Mot. at 7, 12). As the Court has found that JLI is entitled to default judgment on some of its claims, and the scope of the appropriate injunctive or monetary relief would not change based on the merits of the remaining claims, the Court need not reach a decision on those claims. *Microsoft Corp.*, 2021 WL 4755518, at *8 (collecting cases). Accordingly, I respectfully recommend dismissing JLI's remaining claims.

10

III. <u>Damages</u>

JLI seeks statutory damages under the Lanham Act, post-judgment interest, and a permanent injunction to prevent Gates's future infringement of JLI's trademarks,. (Pl.'s Mot. at 13-18).

A. <u>Statutory Damages</u>

JLI seeks $750,000 in statutory damages, reflecting $250,000 for each of the three JUUL marks that were infringed in the two purchases of counterfeit and grey market goods. (Pl.'s Mot. at 17).

"Statutory damages are particularly useful to compensate plaintiffs in the context of a default judgment action because without discovery, plaintiffs often lack any evidence to prove actual damages." *Turn On Prods., Inc. v. Almost Famous Apparel, LLC*, No. 18-CV-0625 (ILG)(RER), 2019 WL 2436297, at *5 (E.D.N.Y. Apr. 12, 2019). Such damages are "are both compensatory and punitive in nature." *Id*. The Lanham Act provides for statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). In cases of willful infringement, the Lanham Act provides for enhanced statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, *as the court considers just*." 15 U.S.C. § 1117(c)(2) (emphasis added).

"To prove willfulness, a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 164 (E.D.N.Y. 2016) (citing *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir.2005)). Willfulness can also be established by a defendant's default. *Deckers Outdoor Corp.*, 2017 WL 1842556, at *7; *Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc.*, No. 10-CV-1077 (RJD)(RER), 2011 WL 1113491, at *2 (E.D.N.Y. Feb. 17, 2011), *adopted by*, 2011

11

WL 1099841 (E.D.N.Y. Mar. 24, 2011). A defendant's continued violation of a trademark after cease-and-desist correspondence is also evidence of willfulness. *Unilever Supply Chain, Inc.*, 2011 WL 1113491, at *3. Here, Gates's willfulness is established both through its default and its continued sales of counterfeit JUUL products after JLI sent the cease-and-desist letter. (ECF No. 10; Compl. ¶¶ 23, 26). Therefore, enhanced statutory damages under 15 U.S.C. § 1117(c)(2) are appropriate.

The Lanham Act does not provide guidelines for courts to use in determining an award that "*the court considers just*." 15 U.S.C. § 1117(c)(2) (emphasis added); *see also Louis Vuitton Malletier, S.A. v. LY USA, et al.*, No. 06 Civ. 13463 (AKH), 2008 WL 5637161, at *1 (S.D.N.Y Oct. 3, 2008). Accordingly, courts look to the following factors from copyright law to determine "just" statutory damages in trademark cases: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *See Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003) (internal quotations omitted) (citing *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).

Courts in this District have awarded a wide range of statutory damages under the Lanham Act depending on the type and scale of infringing activity. *Deckers Outdoor Corp.*, 2017 WL 1842556, at *8 (comparing an award of $1,000,000 per mark for large-scale counterfeiting of cigarettes in *USA Inc. v. Marlboro Express*, No. 03-CV-1161 (CPS), 2005 WL 2076921, at *8 (E.D.N.Y. Aug. 26, 2005) with an award of $75,000 for a smaller-scale counterfeiting of Kosher food marks in

*Union of Orthodox Jewish Congregations of Am. v. Am. Food & Beverage*, 704 F.Supp.2d 288, 293 (S.D.N.Y. 2010)).

In this Court's opinion, JLI's requested award of $750,000 is grossly excessive. A number of the damages-related factors do suggest that JLI is entitled to a substantial award. The JUUL marks no doubt are valuable and ones that JLI has gone to great lengths to protect. Further, by refusing to participate in this litigation, Gates has made it difficult to determine the true scope of the counterfeiting and gray market operation. At the same time, however, JLI has failed to provide evidence of Gates's operation that should be within its control. There is no description in the account of the two instances when JLI purchased counterfeit and grey market JUUL items as to how much those items were worth, whether the purchaser observed other similar JLI products for sale, or how many such products there were at Gates' location. Without such information it is difficult to ascertain with any certainty what JLI's damages are.

Although courts have awarded the maximum statutory damages against defendants who willfully infringe trademarks, *see, e.g., Marlboro Express,* 2005 WL 2076921, at *8 (awarding the then-maximum $1,000,000 per mark for an operation that imported 200,000 cartons of counterfeit cigarettes for resale), courts also consider the scale of the counterfeiting operation when calculating damages, *see, e.g., Phillip Morris USA Inc. v. C.H. Rhodes, Inc.*, No. 08-CV-0069 (ARR) (CLP), 2010 WL 1196124, at *6 (E.D.N.Y. Mar. 26, 2010) (awarding only $500,000 per mark when some 20,000 cartons on counterfeit cigarettes were seized because, as compared with in earlier cases, it reflected "a significantly smaller amount of cartons"), *adopted by*, 2010 WL 1633455 (E.D.N.Y. Apr. 21 2010). Courts also consider whether the marks appear on separate products or whether multiple marks are found on a single counterfeit product, and have found that "that harm does not necessarily double simply because the product bears two counterfeit marks of

13

the same producer. To the contrary, it seems doubtful that there is any additional actual harm at all." *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. 08-CV-0068 (KAM)(JO), 2010 WL 2133937, at *13 (E.D.N.Y. Mar. 11, 2010), *adopted by*, 2010 WL 2160058 (E.D.N.Y. May 27, 2010) (further finding that "such multiplication would needlessly increase both the punitive and deterrent aspects of the award: an infringer's willful replication of a protected product does not become worse simply because the replication involves several marks rather than one"); *see also N. Atl. Operating Co., Inc. v. Evergreen Distributors, LLC*, No. 13-CV-4974 (ERK)(VMS), 2015 WL 13856995, at *12 (E.D.N.Y. Jan. 5, 2015).

Here, JLI has provided no evidence at all about the scale of the counterfeiting operation or its lost profits. Despite the default and the lack of evidence from Gates, JLI would know at least its lost profits from the two infringing sales and the number of allegedly infringing items that were present at Gates when the infringing items were purchased. Given such lack of proof, this Court is not inclined to award the level of statutory damages JLI requests. Therefore, I respectfully recommend that the Court award JLI a total of $50,000 in enhanced statutory damages, $25,000 for each infringing product sold. This is more than enough to remedy any damage DLI may have suffered and discourage any future infringement.[2] *See Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 155 (E.D.N.Y. 2013) (collecting cases) ("Courts regularly award statutory damages in the realm of up to $50,000 as amounts that both account for a defendant's willful disregard of trademark laws and as a deterrent to others who might consider engaging in infringing conduct in the future."); *N. Atl. Operating Co., Inc*, 2015 WL 13856995, at *12 (noting that "courts award far less in statutory damages when the infringing acts

---

[2] JLI's reliance on *JUUL Labs, Inc. v. 5 Borough Market II Corp.*, No. 20-CV-3799 (WFK)(PK) (E.D.N.Y. June 25, 2021) as supporting an award of $250,000 per infringed mark in a similar case is misplaced. That case involved entry of a judgment proposed by JLI without any substantive analysis of the merits of JLI's claims for damages appearing in the record. (ECF Nos. 20 and 21).

14

are smaller in scale") (internal quotations omitted); *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, No. 17 Civ. 4079 (BCM), 2020 WL 2833666, at *1 (S.D.N.Y. May 31, 2020) (rejecting plaintiff's request for statutory damages of $75,000 per mark and awarding a total of $30,000 in statutory damages, or $15,000 per mark, when a store "sold one pack of counterfeit [] rolling papers (for $2.00) and one counterfeit [] rolling tray (for $10.00) to an investigator hired by [plaintiff]."); *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 458 (S.D.N.Y. 2005) (awarding $12,500, or $2,500 for each of five infringed marks, in statutory damages under the Lanham Act when a grocery store was found to have sold ten packs of counterfeit cigarettes); *Golden Goose Deluxe Brand v. Aadct Off. Store*, No. 19 Civ. 2521 (VSB)(GWG), 2020 WL 3167031, at *5 (S.D.N.Y. June 15, 2020), *adopted by*, 2020 WL 6157012 (S.D.N.Y. Oct. 21, 2020) (awarding $75,000 per defaulting defendant when a large online retailer sold counterfeit luxury apparel in a much larger-scale operation than the one described here); *Orthodox Jewish Congregations of Am.,* 704 F.Supp.2d at 293 (awarding $75,000 per type of counterfeit goods when a counterfeiter put fake Kosher certifications on food products). Anything more would amount to a windfall to which JLI is not entitled. *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 297 (E.D.N.Y. 2015) ("Although a statutory damage award may 'exceed actual damages, an award of statutory damages [should] not constitute a windfall for prevailing plaintiffs.'") (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010)); *Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *15 (E.D.N.Y. Oct. 1, 2019), *adopted by*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019).

B. Post-Judgment Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Given the clear mandate of section 1961, I respectfully recommend that the

15

Court award JLI post-judgment interest at the statutory rate specified in 28 U.S.C. 1961(a)-(b). *See Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 426 (S.D.N.Y. 2018) (awarding post-judgment interest in a Lanham Act case at the statutory rate specified in § 1961(a)-(b)).

   C. <u>Permanent Injunction</u>

"The Court may issue an injunction on default judgment if the plaintiff demonstrates that it is entitled to injunctive relief under the applicable statute and it satisfies the prerequisites for the issuance of an injunction." *Fed. Exp. Corp. v. JetEx Mgmt. Servs., Inc.*, No. 13-CV-04431 (CBA)(RER), 2014 WL 4628910, at *4 (E.D.N.Y. May 8, 2014) (citations omitted), *adopted by*, 2014 WL 4628983 (E.D.N.Y. Sept. 15, 2014). The Lanham Act authorizes permanent injunctions if a plaintiff demonstrates:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Deckers Outdoor Corp*. WL 1842556, at *5–6.

"In trademark infringement cases under the Lanham Act, a party may show irreparable injury by demonstrating a likelihood of confusion." *Streamlight, Inc.* 2019 WL 6733022, at *8 (collecting cases); *see also Deckers Outdoor Corp*. WL 1842556, at *6 ("where the court finds a likelihood of consumer confusion, irreparable injury is established"). As discussed above, JLI has shown a likelihood of confusion between its products and the counterfeit and gray market goods sold at Gates. Therefore, JLI has shown an irreparable injury.

JLI has also shown that the available remedies at law are inadequate. First, JLI's use of a cease-and-desist letter failed to stop Gates from selling counterfeit and grey market goods. (Compl. ¶¶

16

23, 26) *Fed. Exp. Corp.*, 2014 WL 4628910, at *4 (finding this prong of the test satisfied when "Defendants ignored [Plaintiff]'s demands to cease and desist from their illegal conduct and failed to defend against this lawsuit."). Second, "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate" plaintiffs such as JLI when their reputations are damaged by the proliferation of counterfeit goods. *Microsoft Corp.*, 2021 WL 4755518, at *10 (quoting *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013).

Third, the remedy is warranted on balance because Gates's sales of counterfeit and gray market JLI products is an ongoing threat to JLI's reputation and brand. *Deckers Outdoor Corp*. WL 1842556, at *6 (finding this prong satisfied when the plaintiff "faces the threat of continuous loss of goodwill and harm to his business reputation absent the issuance of a permanent injunction").

Finally, since the counterfeit and grey market goods are not FDA-approved and are potentially dangerous items of unknown origin, a permanent injunction weighs in the public interest. (Compl. ¶ 25). An injunction also serves the more general public-interest function of eliminating confusion for consumers. *Fed. Exp. Corp.*, 2014 WL 4628910, at *5; *Deckers Outdoor Corp*. WL 1842556, at *6.

Therefore, I respectfully recommend that the Court issue the following order for a permanent injunction, as requested by JLI:

> An injunction by this Court prohibiting Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: engaging or continuing to engage in the infringing, unlawful, unfair, or fraudulent business acts or practices described herein, including the marketing, sale, distribution, and/or other dealing in any non-genuine JUUL Products, including fake counterfeit products or unauthorized

17

grey market products; using without permission any mark or other intellectual property right of JLI; acting to infringe the JUUL Marks; falsely designating the origin of any product to be from JLI; engaging in unfair competition with JLI; or acting in any other manner to derogate JLI's intellectual property rights.

(Compl. at 17; Pl.'s Mot. at 19).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court (1) grant default judgment on JLI's Lanham Act claims of counterfeit goods, gray market goods, and false designation of origin (15 U.S.C. §§ 1114, 1125(a)), as well as its common law trademark infringement claim; (2) dismiss without prejudice JLI's claims of unfair competition under 15 U.S.C. § 1125(a) and common law, and deceptive acts and practices under section 349 of New York General Business Law; (3) award JLI $50,000 in statutory damages and post-judgment interest on those damages at the statutory rate; and (4) issue a permanent injunction barring Gates from selling counterfeit JLI products. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendant by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric N. Vitaliano within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

_____
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: February 9, 2022
         Brooklyn, NY